AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

| | |
|---|---|
| United States of America<br>v.<br>GERSON EMIR CUADRA SOTO a/k/a "EL ALCON"<br>a/k/a "FANTASMA"<br><br>*Defendant(s)* | Case No. 4:25MJ3282<br>**SEALED** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   Jan 1, 2023 - Nov 20, 2025   in the county of   Hall   in the
_____ District of   Nebraska  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 371 | Conspiracy to defraud the United States |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF SA FRANKLIN.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Zachary Franklin, Special Agent, FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 1/5/2026

_____
*Judge's signature*

City and state:   Lincoln, Nebraska   Jacqueline M. DeLuca, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Zachary Franklin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1.  I, Zachary Franklin, Special Agent (SA), Federal Bureau of Investigation (FBI), having been duly sworn, hereby depose and say:

2.  Your Affiant has been employed as a Special Agent with the FBI since January 10, 2019, and has been assigned to the Omaha Field Office, Grand Island Resident Agency, since June 2024. Prior to this, I was assigned to the Las Vegas Field Office. Before becoming an Agent, I was a police officer for 10 years with the North Las Vegas Police Department and Western Illinois University Police Department. As an FBI Agent, your Affiant is currently assigned to the FBI's Tri-Cities Drug Enforcement Task Force ("TRIDENT"), which is comprised of law enforcement officers from the FBI, Nebraska State Patrol ("NSP"), and other local police departments. As a member of the TRIDENT, I am responsible for investigating drug related offenses, however, I am also assigned general investigations, such as kidnappings, murders, robberies, extortion, fraud and other crimes, to include the assistance in immigration violations. As a result of my training and experience, I am familiar with the techniques and methods of operations used by individuals involved in criminal activity to conceal their activities from detection by law enforcement officers.

3.  Your Affiant makes this statement based on his personal knowledge, interviews with law enforcement officers, and information obtained through his investigation. He has not included every fact known to him concerning this investigation.

### Probable Cause

4. Law enforcement officials in Houston obtained and reviewed official United States Immigration records, Honduran law enforcement records, Source of Information (SOI) material, and Confidential Human Source (CHS) information pertaining to **GERSON EMIR CUADRA SOTO** (hereinafter referred to as **CUADRA SOTO**). In general, based on their review of those materials, they came to know that **CUADRA SOTO** is a recognized leader within La Mara Salvatrucha, more commonly known as the abbreviated name, MS-13, a recently designated foreign terrorist organization. Records also showed **CUADRA SOTO** was illegally in the United States and is a fugitive from Honduras who has been charged in Honduras for his alleged participation in a quadruple homicide. Specifically, based on surveillance video, police reports, and witness interviews, **CUADRA SOTO** was part of a professional assassination squad who murdered four individuals on the morning of July 14, 2022, in Tegucigalpa, Honduras.

5. **CUADRA SOTO** was quickly charged by law enforcement in Honduras with firearms charges related to the quadruple homicide and placed in pre-trial detention. However, based on information provided by a Source of Information ("SOI-1"),[1] just four days later, on approximately July 18, 2022, **CUADRA SOTO,** along with two co-defendants, were released from jail. SOI-1 stated, in substance and in part, that **CUADRA SOTO** and his co-defendants paid government officials a bribe of 5 million Honduran Lempiras (approximately $125,000 dollars) in order to secure their release from pre-trial detention. SOI-1 further told the FBI that **CUADRA SOTO** subsequently fled Honduras in November 2022 and illegally crossed the

---

[1] SOI-1 contacted the FBI to provide information regarding Cuadra Soto. SOI is a concerned citizen with direct access to Cuadra Soto and who wishes to ensure that this individual is not permitted to remain in the United States. The information provided by SOI-1 has been reliable and corroborated by other evidence in this investigation.

United States border between Mexico and Texas. A records check revealed **CUADRA SOTO** had never applied for or been granted permission to enter the United States.

6. In November 2025, an FBI Confidential Human Source ("CHS-1") provided information pertaining to the FBI regarding **CUADRA SOTO**.[2] Specifically, CHS-1 told the FBI that **CUADRA SOTO** fled Honduras to avoid prosecution and was in Nebraska.

7. On or about November 20, 2025, the FBI conducted surveillance at 408 E. 2nd Street, #3, Grand Island, NE 68801. The Address was linked to **CUADRA SOTO** pursuant to multiple open-source records. Later that same afternoon, FBI surveillance teams confirmed **CUADRA SOTO's** presence at the Apartment through surveillance and surveillance photographs. At the apartment, FBI Agents located two vehicles parked in front and in back. They were a 2022 Black Dodge Ram, Nebraska registration 14-810N, Vehicle Identification Number (VIN) 0V2200001143521NE and a 2018 black Ford Escape, Nebraska registration 14-AR93, VIN 1FMCU0GD7JUB27635, both registered in **CUADRA SOTO's** name.

8. It is important to note that when surveillance started a couple of days prior on November 17, 2025, the Dodge truck seen at the residence had an expired (10/2025) Nebraska registration on it, 8-1845B, registered to Bolanos Construction, but the registration listed the same VIN. The vehicle then was reregistered in **CUADRA SOTO's** name on November 19, 2025, with the new 14-810N Nebraska registration. The truck was then seen the next morning with the new registration parked behind the residence.

9. While conducting surveillance on **CUADRA SOTO**, investigators followed **CUADRA SOTO** to 104 East Capitol, Grand Island, Nebraska 68801, where he collected scrap

---

[2] CHS has no prior criminal history and is cooperating with the FBI by providing information in exchange for financial compensation.

metal. **CUADRA SOTO** then delivered the scrap metal to Alter Metal Recycling in Grand Island. When collecting payment for the deliver at the facility, **CUADRA SOTO** provided them with his true name, **GERSON EMIR CUADRA SOTO**, with an address of 2031 South Palm Grove Avenue, Los Angeles, CA 90016.

10. Further investigation identified a driver's license issued to **CUADRA SOTO** in California. A thumbprint was obtained from the California Department of Motor Vehicles ("DMV"), which thumbprint was obtained by the DMV when the driver's license was issued. The FBI conducted a fingerprint analysis and discovered that the fingerprint provided by the DMV was a match with the fingerprint for **CUADRA SOTO** provided by Honduran law enforcement to the FBI.

11. As part of this investigation, law enforcement has conducted a comprehensive review of the documentation received from Honduran law enforcement and United States immigration authorities to ascertain whether **CUADRA SOTO** traveled to the United States with a visa or through an alternative travel authorization. The findings revealed that no records pertaining to **CUADRA SOTO** were found, consistent with the information provided by SOI-1 and CHS-1.

12. Your Affiant knows that **CUADRA SOTO** was subsequently arrested for and charged with violating 8 U.S.C. § 1325, illegal entry into the United States.

13. As part of that investigation, your Affiant interviewed Candy Lopez (**LOPEZ**) on December 8, 2025.

14. In the course of that interview, **LOPEZ** told your Affiant that she was married to a man who was a childhood friend of **CUADRA SOTO**. Approximately five years prior, she and

her husband were in Honduras to get **LOPEZ's** husband's immigration paperwork in order. During that time, she met **CUADRA SOTO**.

15. Approximately two to three years ago, **CUADRA SOTO** reached out to **LOPEZ**. He asked her if she had any work for him. He stated he was in Texas and trying to move his family to Nebraska.

16. **LOPEZ** runs a roofing business, NC Pro Roofing, in Grand Island.

17. **LOPEZ** began to have **CUADRA SOTO** drive trailers to roofing dump sites. All **LOPEZ** required for **CUADRA SOTO** to work for her was a driver's license, and she believed he had obtained a California driver's license. She did not require him to provide any other documents, such as a social security card or other employment authorization document, because she knew he did not have them. **LOPEZ** stated she paid **CUADRA SOTO** in the form of a check every week and on average, she would pay him $1,000 per week when they were busy. She stated she paid him $120 for every trailer he dropped off at a roofing site.

18. **LOPEZ** also said that she could not do a 1099 form, showing **CUADRA SOTO**'s income, for **CUADRA SOTO** because he did not have a social security number. **LOPEZ** said she told **CUADRA SOTO** when he started working for her that he needed to obtain an individual tax identification number, but believed the holdup on him doing so was that he needed a passport from Honduras, which he could only obtain at a Honduran Consulate, located in either Miami or Chicago. **LOPEZ** also believed **CUADRA SOTO**'s wife had just gotten a social security number, so **LOPEZ** was unsure if they were going to start claiming the income she was paying **CUADRA SOTO** under his wife's social security number.

19. Law enforcement served a judicially authorized search warrant on **CUADRA SOTO's** residence. During the search of that residence, investigators located an unstamped

Honduran passport for **CUADRA SOTO**, opened and unopened pieces of mail for CUADRA SOTO at the address, several years of check stubs from various companies in multiple states made out to CUADRA SOTO, a pair of Texas license plates that belonged to CUADRA SOTO, CUADRA SOTO's California Driver's License and application with his attached Honduran License, IRS letters regarding tax payments due and ITIN (Individual Tax Identification Number) addressed to CUADRA SOTO, multiple airline boarding passes to various U.S. Cities, such as Chicago and Miami. To your Affiant, this shows that **CUADRO SOTO** had the documents to provide to **LOPEZ** but chose not to in an effort to defraud the federal government.

20.   Your Affiant showed **LOPEZ** a copy of a NC Pro Roofing check made out to **CUADRA SOTO** that was found during the search at **CUADRA SOTO's** residence and she confirmed this would have been one of the checks she issued to **CUADRA SOTO**.

21.   To be able to give **CUADRA SOTO** work and pay, **LOPEZ** would pay **CUADRA SOTO** using company funds, but on the backend make it appear the money went to her. She said she paid taxes on her reported income, including the income she made appear went to herself when it really went to **CUADRA SOTO**. **CUADRA SOTO** never asked LOPEZ to do or not to do a 1099 for him, never asked to report or not report income for him or change any documents for him. LOPEZ said in a way she submitted Social Security withholdings for the monies paid to **CUADRA SOTO** because the money paid to her had the withholdings taken out.

22.   **LOPEZ** said she believed that **CUADRA SOTO** had other jobs, such as working for a "gutter guy" at times, but she did not recall the names of the individuals or companies for which he worked.

23.   **LOPEZ** said that **CUADRA SOTO** knew she was doing this for him and knew it was because he was not allowed to work and was illegally in the United States.

24.     **LOPEZ** further confirmed with your Affiant that she has other subcontractors but pays them all with 1099s and they all have social security numbers.

25.     As your Affiant stated earlier, IRS paperwork was found in **CUADRA SOTO's** apartment during the search warrant. One item of the IRS paperwork was a bill dated May 19, 2025, which referenced **CUADRA SOTO's** 1040 filed for the year 2024. In that bill the IRS identified **CUADRA SOTO's** last four of his ITIN as "2931," which showed he had an ITIN for the tax year 2024 and while employed by **LOPEZ**.

26.     Another item from the IRS paperwork was a letter addressed to **CUADRA SOTO** dated May 22, 2025. The letter referenced **CUADRA SOTO's** 1040 tax form from December 31, 2023 (2023 tax year) and requested he fix incomplete or missing information. The letter referenced information needed on Schedule C, Schedule 1, Schedule SE, and Schedule 2, with specific explanations needed in support of amounts listed on lines of those forms. These forms are required for self-employed or 1099 employees. Your Affiant knows additional information such as the information sought by the IRS in this letter can be needed when an employer reports wages under a Social Security Number or ITIN when the individual themselves did not report the amount earned with that employer. This letter also referenced **CUADRA SOTO's** Social Security Number's last four digits as "2931."  **CUADRA SOTO** has not been issued a Social Security Number but the last four listed by the IRS do match the last four listed for **CUADRA SOTO's** ITIN from the IRS bill dated May 19, 2025. It is your Affiant's belief that either the IRS used these number synonymously, or **CUADRA SOTO** provided this number to an employer as a Social Security Number in an attempt to work legally and not an ITIN. Either way, **CUADRA SOTO** had an ITIN during the 2023 tax year.

27. Your Affiant knows those working without authorization in the United States can still obtain an ITIN in order to file taxes, however, receipt of an ITIN does not replace the legal requirements to work and does not authorize a person to work in the United States.

28. NC Pro Roofing records have been provided to your Affiant. In reviewing them, your Affiant can see that **LOPEZ** paid **CUADRA SOTO** around $66,000 in income between the middle of 2024 and end of 2025. That income was tracked as **LOPEZ** described – in that it was not tracked as official income and the fact that **CUADRA SOTO** was being paid was not shared with any other professional working with NC Pro Roofing such as their accountant. A list of 1099 employees was kept and **CUADRA SOTO** was not on that list.

29. Although **LOPEZ** agreed with **CUADRA SOTO** to pay him in a way to avoid the legal work and reporting requirements until he received an ITIN, **CUADRA SOTO** had every opportunity to provide **LOPEZ** with the ITIN that he already had as shown by the IRS documents from the 2023 and 2024 tax years.

30. Based on the information contained in this Affidavit, your Affiant respectfully requests a complaint be authorized charging **GERSON CUADRA SOTO** with violating 18 U.S.C. § 371 by defrauding the United States. As evidenced by the statements from **LOPEZ**, **CUADRA SOTO** reached out, seeking employment from **LOPEZ**. Additionally, **CUADRA SOTO** and **LOPEZ** combined, conspired, confederated, and agreed to defraud the United States of and concerning its right and governmental function to foster, promote, and develop the welfare of wage earners, job seekers and retirees of the United States, assure work-related benefits and rights, collect taxes and other income based assessments, and its right to have its official business of reviewing, processing, and granting visas and other work related documents

processed through appropriate channels honestly and free from corruption, fraud, dishonesty, and unlawful impairment and obstruction.

Respectfully Submitted,

_____
Zachary Franklin, Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic means.

_1/5/2026_____  _____
Date  Jacqueline M. DeLuca
 United States Magistrate Judge